## ADMINISTRATIVE ORDER OF THE
## CHIEF ADMINISTRATIVE JUDGE OF THE COURTS

Pursuant to the authority vested in me, and upon consultation with and agreement of the Administrative Board of the Courts, I hereby amend the uniform rules for courts exercising criminal jurisdiction (22 NYCRR Part 200) by adding sections 200.16 and 200.27 as follows, effective January 1, 2018:

\* \* \*

200.16/200.27: Issuance of Order Confirming Disclosure and Notice Obligations

In all criminal actions on an indictment, prosecutor's information, information, or simplified information, where counsel for the defendant has provided the prosecutor with a written demand as specified under CPL 240.10(1) and 240.20, or where the prosecution has waived such demand, the court shall issue an order to prosecution and defense counsel that, inter alia, (1) confirms the prosecutor's disclosure obligations pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *People v Geaslen*, 54 N.Y.2d 510 (1981), and their progeny; and (2) confirms defense counsel's professional obligation to provide effective assistance of counsel and meet defendant's statutory notice obligations. The order shall be issued on the first scheduled court date, following demand, where both the prosecutor and defense counsel are present. The Chief Administrator of the Courts shall promulgate a model order for this purpose that the court may use as it deems appropriate.

Chief Administrative Judge of the Courts

Dated: November 6, 2017

AO 291/17



# PRESS RELEASE

**New York State**
**Unified Court System**

**Hon. Lawrence K. Marks**
**Chief Administrative Judge**

**Contact:**
**Lucian Chalfen, Public Information Director**
**Arlene Hackel, Deputy Director**
**(212) 428-2500**

www.nycourts.gov/press

**Date: November 8, 2017**

## Chief Judge DiFiore Announces Implementation of New Measure Aimed at Enhancing the Delivery of Justice in Criminal Cases

**New York** – To help prevent wrongful convictions and enhance the delivery of justice in criminal matters, Chief Judge Janet DiFiore today announced the adoption of new rules that will require judges presiding over criminal trials to issue an order notifying and reminding prosecutors and defense attorneys appearing before them of their professional responsibilities. While numerous state and federal judges have individually issued such orders, the New York State court system is the nation's first jurisdiction to implement such a measure on a statewide level.

Trial court judges in applicable cases will issue an order to the prosecutor responsible for the case to timely disclose exculpatory evidence favorable to the accused – called Brady material (referring to the landmark U.S. Supreme Court decision *Brady v. Maryland,* that in criminal cases prosecutors must disclose all evidence that could be materially favorable to the defense) – as required by the federal and state constitutions, statutory and ethical rules.

This order makes specific reference to the types of material that could be required to be disclosed, including information that impeaches the credibility of witnesses, exculpates or reduces the degree of the defense, or mitigates the degree of the defendant's culpability or punishment.

Additionally, trial judges in criminal cases will be required to issue a directive focusing on the defense counsel's obligations to provide constitutionally effective representation in the case, such as keeping the client informed about the case, providing reasonable advice regarding

any plea offers, and performing a reasonable investigation of both the facts and law pertinent to the case. A copy of such order will be given to the defendant in the case.

While the professional responsibilities of prosecutors and defense attorneys are regulated by law, the new order, which does not in any way change existing law, provides a mechanism by which to educate inexperienced prosecutors and defense attorneys − and remind experienced ones − about their constitutional and ethical duties.

Both directives are modeled on the recommendations of the New York State Justice Task Force, among the first permanent task forces to address wrongful convictions and whose work has generated significant reforms.

Recently, the Justice Task Force concluded an extensive study, producing a report centered on serious concerns that undermine the fairness and reliability of the criminal justice process, namely Brady violations by prosecutors and ineffective representation by defense attorneys. In its report, the task force offered a series of recommendations to address these issues. Foremost was a call for judges in criminal cases to have a greater oversight role, including that judges in applicable criminal cases issue standing orders informing the prosecution and defense of their respective obligations.

As noted by the Justice Task Force in its report, an order directed to the prosecution "would create a culture of disclosure, educate inexperienced prosecutors, serve as a reminder for more experienced prosecutors regarding their disclosure obligations, and ensure that judges have an ability to enforce compliance with disclosure requirements." While permitting a court to impose sanctions or take other appropriate action for deliberate violations, the order's primary goal is preventative. In proposing a directive aimed at defense counsel, the task force's objective was to devise a useful, detailed reminder to defense attorneys regarding their most fundamental duties to provide constitutionally effective legal representation in the case.

The Justice Task Force drafted model directives for the courts to use, with these proposals submitted for public comment this past spring. Following the comment period, Chief Administrative Judge Lawrence K. Marks, with the approval and consent of Chief Judge DiFiore and the Administrative Board of the Courts, issued an Administrative Order, amending the uniform rules for courts exercising criminal jurisdiction to require judges in applicable criminal actions to issue an order notifying both the prosecution and defense of their legal and ethical obligations. The order is to be issued at the early stages of the case. While the Chief Judge's Administrative Order does not mandate the issuance of any specific directive, a model order has been approved for use.

"This newly adopted measure will go a long way to help prevent and remedy systemic errors that contribute to wrongful convictions, acting as a consistent reminder to prosecutors and

defense attorneys of their respective – and critically important − roles in the fair administration of justice. I commend the Justice Task Force for its thoughtful recommendations pertaining to attorney responsibility in criminal cases, including the proposed directives, and for its steadfast commitment to due process and the eradication of wrongful convictions of the innocent in New York State," said Chief Judge DiFiore, who in her former role as Westchester County District Attorney served as a Justice Task Force co-chair.

"The statewide application of these directives will serve to promote the quality of justice in New York, increasing judges' ability to ensure that prosecutors and criminal defense attorneys appearing before them have a clear, thorough understanding of their legal and ethical obligations. Along with the Justice Task Force, whose outstanding efforts have led us to this historic point, I am appreciative to all those who provided valuable input on the proposed orders during the public comment period," said Chief Administrative Judge Marks.

Copies of the Administrative Order and approved model order, along with the New York Justice Task Force's Report on Attorney Responsibility in Criminal Cases, are attached.

# # #



New York State Justice Task Force

# Report on Attorney Responsibility in Criminal Cases

February 2017

A component of attorney responsibility is attorney discipline, which has been addressed in New York State in various capacities by a number of different entities in recent years. In 2009, for example, the New York State Bar Association's Task Force on Wrongful Convictions published a report that addressed one component of attorney discipline in the criminal context: prosecutorial misconduct.[1] Most recently, former Chief Judge Lippman created the Commission on Statewide Attorney Discipline, which conducted a comprehensive review of New York's attorney disciplinary system. The Commission issued a report in September 2015 offering recommendations to enhance the efficiency and effectiveness of the attorney discipline process.[2]

Though the topic of attorney discipline has been studied, the Task Force recognized that there continues to be a dearth of statistics and raw data on the prevalence of attorney misconduct in the criminal context and on the potential contribution of such misconduct to wrongful convictions.[3] Nonetheless, the Task Force discussed the fact that there may be a public perception that attorney misconduct—particularly prosecutorial misconduct—is, in fact, a significant contributor to wrongful convictions.

Beginning in October 2015, the Task Force hosted presentations from academics, representatives of the Appellate Division of the Supreme Court, and representatives of the Commission on Statewide Attorney Discipline on the subject of attorney responsibility and discipline in the criminal context. In December 2015, the Task Force created a subcommittee to examine the issue in greater depth. The subcommittee discussed a number of possible reforms, taking into account existing reports on attorney misconduct, including the Commission's September 2015 report, proposed legislation, and proposals from the Legal Aid Society, the Innocence Project, the District Attorneys' Association of the State of New York ("DAASNY"), individual New York State judges, and various other entities and individuals. The subcommittee also reviewed case law, news articles, and commentary for additional context on the issue.

After four full Task Force meetings,[4] six subcommittee meetings,[5] and a number of additional meetings of a smaller subgroup, the 21 voting members of the Task Force achieved consensus on the majority of the recommendations considered, in many cases reaching

---

[1] New York State Commission on Statewide Attorney Discipline, "Enhancing Fairness and Consistency[,] Fostering Efficiency and Transparency," September 2015, *available at* https://www.nycourts.gov/attorneys/discipline/ (hereinafter, "Commission on Statewide Attorney Discipline Report").

[2] As a result of those recommendations, the four Departments of the New York State Supreme Court, Appellate Division, adopted new, uniform, statewide rules to govern New York's attorney disciplinary process, which provide for a harmonized approach to the investigation, adjudication, and post-proceeding administration of attorney disciplinary matters. *See* Part 1240 of the Rules of the Appellate Division (22 NYCRR Part 1240) (effective July 2016).

[3] While the Commission on Statewide Attorney Discipline did not focus specifically on criminal matters, it did briefly address the issue of "prosecutorial misconduct," including the possibility of having a separate disciplinary mechanism specifically dedicated to such matters. *See* Commission on Statewide Attorney Discipline Report, at 75. Ultimately, the Commission recommended that judicial determinations of prosecutorial misconduct be promptly referred to disciplinary committees and that each Department should track and record such matters "with a view toward generating annual statistical reports." *Id.* The Commission also noted that a distinction should be made between good-faith error and any "unethical or malicious" behavior. *Id.*

[4] The Task Force meetings occurred on October 19, 2015, November 13, 2015, October 21, 2016, and November 4, 2016.

[5] The subcommittee meetings occurred on December 14, 2015, January 28, 2016, April 7, 2016, June 13, 2016, June 21, 2016, and July 16, 2016.

unanimous or near-unanimous agreement. The diverse perspectives and relevant backgrounds of the subgroup, subcommittee, and Task Force members proved critical to these recommendations.

As discussed in greater detail below, and as enumerated at Appendix A, the Task Force agreed on a series of recommendations concerning: (1) use of the term "misconduct," (2) reporting of attorney "misconduct," (3) the grievance process, (4) data collection and statistics, (5) the role of the judiciary in making referrals for disciplinary review, and (6) training. In addition, the Task Force recognized that prosecutorial error in the *Brady* context, as well as failure of defense counsel to adhere to their professional obligations, has the potential to contribute to incidents of wrongful convictions. After a great deal of discussion, the Task Force agreed to the groundbreaking recommendation that all New York State trial court judges should issue an order at the outset of criminal cases regarding the obligation of prosecutors to make timely disclosures of information favorable to the defense as required by *Brady v Maryland*, 373 US 83 (1963), *Giglio v United States*, 405 US 150 (1972), *People v Geaslen*, 54 NY2d 510 (1981), and their progeny under the United States and New York State constitutions, and under Rule 3.8(b) of the New York Rules of Professional Conduct. The Task Force similarly recommended that all New York State trial court judges issue an order directing criminal defense counsel to comply with the defendant's statutory notice obligations and help ensure constitutionally effective representation.

## Recommendations Relating to Attorney Responsibility in Criminal Cases

### I.   Use of the Term Misconduct

At the outset, the Task Force spent significant time discussing its view that the terms "misconduct" and, in particular, "prosecutorial misconduct," are too often used without sufficient regard to their meaning and connotations. The overbroad use of the term "misconduct" can create the perception that any time an error is made, regardless of whether that error was intentional or a mistake made in good faith, there has been malfeasance. Accordingly, the Task Force recommended that when discussing attorney misconduct, courts, the press, and academics be conscious of the distinction between good-faith error and intentional wrongdoing. In particular, the Task Force recommended that the terms "prosecutorial misconduct" and "defense counsel misconduct" be reserved for instances where a prosecutor or defense attorney engages in conduct—including a pattern or practice of behavior—that violates a law, ethical rule, or standard, either with the intent to do so or with a conscious disregard of doing so, and where there is no good-faith reason for having done so. In a similar vein, trial and appellate courts, wherever possible, should distinguish between good-faith error and prosecutorial or defense counsel misconduct in written opinions and provide clear guidance regarding the specific attorney conduct that has been deemed improper, in order to enable practitioners to avoid such conduct in the future.

## II.  Encouraging Reporting of Attorney Misconduct

The Task Force identified an apparent perception in the literature and in the media that misconduct—particularly by prosecutors—is underreported.  In order to address this perception, the Task Force discussed ways to encourage both practitioners and judges to report potential misconduct with greater frequency, and ultimately, made recommendations to achieve that end.

Currently, New York State Rule of Professional Conduct 8.3(a) only requires a lawyer to report misconduct where that lawyer "knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer. . . ." (emphasis added).  The Task Force discussed that many attorneys use this standard as a threshold, only reporting potential misconduct if they firmly "know" that there has been a violation.  This has the potential to result in underreporting, as it is difficult to "know" for certain that a violation has occurred.  Instead of basing the decision regarding whether to report solely on Rule 8.3(a), the Task Force recommended that lawyers (including District Attorneys' offices and institutional defense providers) and judges be encouraged to report misconduct, regardless of whether it is required, in situations where a lawyer or judge knows or is aware of a high probability based on credible evidence that another lawyer has engaged in misconduct.

Further, to the extent that they have not already done so, it is recommended that District Attorneys' offices and institutional defense providers develop clear, written internal procedures regarding how allegations of error and misconduct against lawyers on their respective staffs will be processed and reviewed.  Moreover, these institutions should develop such procedures explaining how corrective actions (whether individual or office-wide), if appropriate, will be implemented.  The Task Force also recommended that District Attorneys' offices and institutional defense providers maintain internal procedures regarding when to refer or report misconduct (whether that of their own lawyers or other lawyers) to the appropriate disciplinary authorities.  District Attorneys' offices and institutional defense providers also are encouraged to make these written procedures publicly available.

Finally, the Task Force believes that it is important that members of the public understand the role of Grievance Committees and how to report misconduct.  The Task Force therefore recommended that Grievance Committees disseminate information to the public explaining their function and practice, and the procedures for filing a complaint.

## III.  Grievance Process

A question that has been the subject of much discussion and study, including by the Commission on Statewide Attorney Discipline, is whether there should be a separate body (either within or apart from the established Grievance Committees) specifically designated to consider allegations of prosecutorial or defense counsel misconduct.  Proponents of a separate body argue that investigating potential misconduct in the criminal context requires specialized knowledge

4

that the current Grievance Committees lack. However, others believe that a separate body is unnecessary and that it would be more efficient and achievable to make improvements within the already-established grievance process. The Task Force ultimately agreed with the latter view, determining that the existing Grievance Committees should take certain steps to ensure that they are equipped to handle criminal justice matters.[6]

In particular, the Task Force recommended that Grievance Committees include active practitioners from both the prosecution and defense bars who have substantial experience and expertise in the criminal justice system. Moreover, all Grievance Committee members should be provided with specialized training on the standards relating to criminal matters. It is also important that investigations be undertaken where a finding of attorney misconduct has been made in a court decision. Such findings may include prosecutorial misconduct or ineffective assistance of counsel. Accordingly, to the extent that they are not currently doing so, the Grievance Committees should proactively review available court decisions where such a finding has been made. Additional dedicated funding and staff should be allocated to undertake this effort as needed.

## IV.    Data Collection and Statistics

As indicated, there currently is a public perception that misconduct (particularly prosecutorial misconduct) is prevalent in the criminal justice system and that responsible attorneys are not being appropriately disciplined. However, there is a dearth of statistics in support of such propositions. Recognizing the work already being done by the Office of Court Administration and the Grievance Committees to collect data and statistics about attorney discipline generally, the Task Force made recommendations regarding data collection in the criminal context that would fit within and improve upon the existing framework.

First, it is important that the data collected by the Office of Court Administration and Grievance Committees include details that allow prosecutors, defense lawyers, and the public to better understand the nature of the matters being reported and whether there are discernable trends that should be addressed through training or otherwise. This data should include the type (e.g., prosecutorial or defense counsel misconduct), nature (e.g., discovery-related), and number of complaints received and reviewed, and resulting determination, if any. Data should be aggregated and analyzed, and statistics should be published.

Further, the Grievance Committees should publish annual reports that aggregate data about the number of grievances filed against prosecutors and criminal defense attorneys and the outcomes of those allegations. These reports should provide information about the types of allegations that have been substantiated and should include recommendations, where appropriate, for new or additional training, supervision, or practices based on the Grievance Committees' review of these matters.

---

[6] See supra note 2.

The Task Force also discussed how to ensure that District Attorneys' offices and institutional defense providers are made aware when someone on their staff has been referred to the Grievance Committee for potential misconduct. In considering this issue, Task Force members determined that it was important to distinguish between requiring notification of an allegation (which may be frivolous or unsubstantiated) and requiring notification of actual Grievance Committee investigations. To this end, the Task Force recommended that, to the extent that they do not already do so, District Attorneys' offices and institutional defense providers require staff to notify their supervisors when they become aware that a Grievance Committee has commenced an investigation into their conduct. Staff should also notify their supervisors when they become aware that a Grievance Committee has made a determination following an investigation.

## V.    Role of Judiciary in Making Referrals

As discussed, the Task Force focused on the perception that attorney misconduct is underreported. Recognizing that the judiciary can play an important role in the referral of prosecutors or criminal defense lawyers for disciplinary review, the Task Force recommended that judges receive training on the standards and processes for referring attorneys for disciplinary review. Further, judges should be encouraged to promptly refer to the appropriate Grievance Committee all matters in which a judicial finding of prosecutorial or criminal defense counsel misconduct has been made.

## VI.    Training

The Task Force concluded that education and training are fundamental to achieving compliance with applicable rules and standards. To the extent that they do not already do so, prosecutors and institutional defense provider attorneys should receive training, both at the outset of employment and periodically thereafter, with respect to their ethical and other obligations. The content of these training programs should be updated as needed to reflect recent case law, ethical opinions, new technology and research, as well as to address any areas of needed improvement identified by internal supervision, courts, or the Grievance Committees. The New York Prosecutors Training Institute ("NYPTI") should receive and review any report issued by the Grievance Committees and incorporate the recommendations into NYPTI's various educational programs and statewide bulletins. Furthermore, solo practitioners should be given the opportunity to receive similar training through free Continuing Legal Education ("CLE") courses.

District Attorneys' offices and institutional defense providers should also work together to foster a culture of openness, transparency, and shared learning. They should meet on a regular basis to discuss issues and concerns regarding the Rules of Professional Conduct, best practices on difficult practice points, lessons learned from internal and external allegations/investigations,

and when referrals should be made. In addition, offices should be encouraged to share their internal protocols with each other.

Finally, the Grievance Committees should meet periodically with representatives of the local prosecution and the criminal defense bar to provide an overview of the types of allegations they are receiving and alert these representatives to areas of law or practice where additional training or supervision is needed.

## VII.   Order Regarding Disclosure Obligations for Prosecutors

Building from its recommendations regarding education and training, the Task Force also considered whether it would be helpful for trial courts to issue a standing order in criminal cases regarding the prosecution's obligation to make timely disclosures of favorable information to the defense pursuant to federal and state constitutional and ethical rules. As noted, *Brady* violations can lead to wrongful convictions. The Task Force has discussed this link between *Brady* violations and wrongful convictions in the past, including in its July 2014 Report on Recommendations Regarding Criminal Discovery Reform. That report noted that additional recommendations relating to *Brady*, including with respect to the training of prosecutors, should be considered.

To this end, Task Force members generally agreed that a form document issued by trial courts regarding prosecutors' disclosure obligations would serve as a useful educational tool; however, there was significant debate regarding whether such document should be framed as an order or instead as a notice or reminder. Proponents of an order contended that an order would create a culture of disclosure, educate inexperienced prosecutors, serve as a reminder for more experienced prosecutors regarding their disclosure obligations, and ensure that judges have an ability to enforce compliance with disclosure requirements. Proponents of a notice or reminder (rather than an order) expressed concern that adopting an order had the potential to criminalize disclosure mistakes by prosecutors and undermine the existing attorney disciplinary structure.

Ultimately, the Task Force recommended that courts issue an order directing the prosecuting authority to disclose all covered materials and that such order should be directed to the District Attorney and the Assistant responsible for the case. The order should be issued by trial courts upon defendant's demand at arraignment on an indictment, prosecutor's information, information, or simplified information (or, where either the People or counsel for the defendant is not present at the arraignment, at the next scheduled court date with counsel present).

The Task Force drafted a model order for use by trial courts, attached hereto as Appendix B. This model contains certain key features that the Task Force agreed are necessary to ensure both that the order serves an educational purpose and that it encourages a culture of compliance, as intended. Its key provisions include the following:

7

- The order references three broad categories of information favorable to the defense (exculpatory, impeaching, and affecting suppression). It cites to the prosecutor's constitutional obligations under *Brady v Maryland*, 373 US 83 (1963), *Giglio v United States*, 405 US 150 (1972), *People v. Geaslen*, 54 NY2d 510 (1981), and their progeny under the United States and New York State constitutions, and to the prosecutor's ethical obligations under Rule 3.8(b) of the New York State Rules of Professional Conduct.

- There is a specific reference to certain types of materials or information that could be required to be disclosed, including: (1) relevant benefits, promises, or inducements to a witness in connection with the witness's testimony or other cooperation in the case (which may come from law enforcement officials, law enforcement victims services agencies, or the prosecutor); (2) prior inconsistent statements and uncharged criminal conduct and convictions; and (3) a witness's mental or physical illness or substance abuse.

- With respect to the timing of disclosure, the order states that the prosecutor is obligated to timely disclose information in accordance with the United States and New York State constitutions, as well as CPL article 240. However, in order to encourage early disclosure and provide some guidance as to reasonableness in this area, the order contains a statement that disclosure is presumptively timely if the prosecutor shall have completed it no later than 30 days before commencement of a trial in a felony case and 15 days before commencement of a trial in a misdemeanor case.

- Finally, in furtherance of the intent that this order serve an educational purpose and not be construed as a means of sanctioning prosecutors for good-faith error, the order contains a statement that only willful and deliberate conduct will constitute a violation of the order or permit personal sanctions against a prosecutor.[7]

## VIII.  Order Regarding Obligations for Defense Attorneys

The Task Force also recognized that the failure of defense counsel to adhere to their professional obligations (such as the duty to provide effective assistance of counsel) can contribute to wrongful convictions. As a result, the Task Force recommended that courts adopt an order to be issued by the trial court on every criminal case, directing defense counsel to comply with the defendant's statutory notice obligations and seeking to ensure constitutionally

---

[7] There was lengthy discussion regarding whether the order should incorporate a materiality threshold, whereby either the prosecuting authority would be required to disclose only material information favorable to the defendant or only failures to disclose material information would permit sanctions. Ultimately, the Task Force determined that materiality should not be referenced in the order, but provided that only willful and deliberate conduct will constitute a violation of the order or permit personal sanctions against a prosecutor.

effective representation. This order should be directed to the firm or institutional defender (and also to the individual attorney responsible for the case at a firm or institutional defender). For non-institutional providers, it should be directed to the individual defense counsel. The defendant should be provided with a copy of the order. A model order recommended by the Task Force is attached hereto as Appendix C.

## Appendix A

*Summary of Recommendations Regarding Attorney Responsibility in Criminal Cases*

### I.   Use of the Term Misconduct

1.  Courts, the press, and academics should be encouraged to be conscious of the distinction between good-faith error and intentional wrongdoing when discussing misconduct.

2.  The terms "prosecutorial misconduct" or "defense counsel misconduct" should be reserved for instances where a prosecutor or defense attorney engages in conduct, including a pattern or practice of behavior, that violates a law, ethical rule, or standard, either with the intent to do so or with a conscious disregard of the same, and there is no good-faith reason for having done so.

3.  Trial and appellate courts should be encouraged to, wherever possible, distinguish between good-faith error and prosecutorial or defense counsel misconduct in written opinions and to provide clear guidance regarding the specific attorney conduct that has been deemed improper to enable practitioners to avoid such conduct in the future.

### II.   Encourage Reporting of Attorney Misconduct

1.  Lawyers (including District Attorneys' offices and institutional defense providers) and judges should be encouraged to report misconduct, regardless of whether it is required, in situations where a lawyer or judge knows or is aware of a high probability based on credible evidence that another lawyer has engaged in misconduct.

2.  Grievance Committees should disseminate information to the public about what they do and how to file a complaint.

3.  To the extent that they do not already do so, District Attorneys' offices and institutional defense providers should (i) develop clear written internal procedures regarding how allegations of error and misconduct against internal lawyers will be processed and reviewed, and (ii) based on their review finding, take corrective actions, if appropriate, both on an individual and office-wide level.

    a.  District Attorneys' offices and institutional defense providers should develop internal procedures regarding how allegations of error and misconduct against external lawyers will be processed and reviewed.

    b.  District Attorneys' offices and institutional defense providers should develop internal procedures regarding when to refer/report misconduct of internal or external lawyers to the appropriate disciplinary authorities.

    c.  District Attorneys' offices and institutional defense providers should be encouraged to make public finalized internal written procedures.

### III.    Grievance Process

1. The Grievance Committees should include active practitioners from both the prosecution and defense bars who have substantial experience and expertise in the criminal justice system to address allegations of attorney misconduct filed against prosecutors and defense attorneys.

2. Although no change should be made to the existing Grievance Committee structure, specialized training should be provided to existing Grievance Committee members on the standards relating to criminal matters.

3. To the extent that it does not already do so, the entity tasked with addressing grievances in criminal matters should proactively review available court decisions where a finding of attorney misconduct is made.  As necessary, additional, dedicated funding and staff should be allocated to undertake this effort.

### IV.    Data Collection and Statistics

1. The Office of Court Administration and the Grievance Committees should collect, aggregate, analyze, and publish statistics regarding attorney misconduct regarding the type (e.g., prosecutorial or defense counsel misconduct), nature (e.g., discovery-related), and number of complaints received and reviewed and the resulting determination, if any.

   a. The Grievance Committees should publish annual reports that aggregate data about the number of grievances filed against prosecutors and defense attorneys and the outcomes of those allegations.  These reports should provide information about the types of allegations that have been substantiated, and these reports should include recommendations, where appropriate, for new or additional training, supervision, or practices based on the Grievance Committees' review of these matters.

   b. To the extent that they do not already do so, District Attorneys' offices and institutional defense providers should require staff to notify their supervisors whenever they become aware that a Grievance Committee has commenced an investigation about them.

   c. To the extent that they do not already do so, District Attorneys' offices and institutional defense providers should require staff to notify their supervisors whenever they become aware that a Grievance Committee has made a determination following an investigation about them.

### V.    Role of Judiciary in Making Referrals

1. Judges should receive training on the standards and processes for referring attorneys for disciplinary review.

2. Trial and appellate court judges should promptly refer to the appropriate Grievance Committee all matters in which a judicial finding of prosecutorial or defense counsel misconduct has been made.

## VI.  Training

1. Prosecutors should receive training, both at the outset of employment and periodically throughout their tenure, in criminal law and procedure, ethical obligations, and all areas of professional practice. The content of these training programs should be updated as needed to reflect recent case law, ethical opinions, new technology and research, as well as to address any areas of needed improvement identified by internal supervision, courts, or the Grievance Committees. The NYPTI should receive and review any report issued by the Grievance Committees and incorporate the recommendations into NYPTI's various educational programs and statewide bulletins.

2. Institutional defense provider attorneys should receive training, both at the outset of employment and periodically throughout their tenure, in criminal law and procedure, ethical obligations, and all areas of professional practice. The content of these training programs should be updated as needed to reflect recent case law, ethical opinions, new technology and research, as well as to address any areas of needed improvement identified by internal supervision, courts, or the Grievance Committees. Solo practitioners should be given the opportunity to receive similar training through free CLE courses.

3. Prosecutors' offices and institutional defense providers should meet with one another on a regular basis to discuss issues and concerns regarding the Rules of Professional Conduct, best practices on difficult practice points, lessons learned from internal and external allegations/investigations, and when referrals should be made. Offices should be encouraged to share their internal protocols with one another to foster openness and transparency.

4. Grievance Committees should meet periodically with representatives of the local prosecution and the defense bar to provide an overview of the types of allegations they are receiving and alert these attorneys to areas of law or practice where additional training or supervision is needed.

## VII.  Order Regarding Disclosure Obligations for Prosecutors

1. Courts should adopt a form document to be issued by trial courts in criminal cases regarding certain disclosure obligations of the prosecuting authority and to provide recommended language for that document.

2. The scope of the document should be explained through reference to three categories of information favorable to the defense (exculpatory, impeaching and affecting suppression) and by citing obligations under *Brady v Maryland*, 373 US 83 (1963), *Giglio v United States*, 405 US 150 (1972), *People v Geaslen*, 54 NY2d 510 (1981), and their progeny under United States and New York State constitutions, and obligations under Rule 3.8(b) of the New York State Rules of Professional Conduct.

3.  The document should be phrased as an order, which should <u>direct</u> the prosecuting authority to disclose all covered materials.

4.  The order should be directed at the District Attorney <u>and</u> the Assistant responsible for the case.

5.  The order should not contain any reference to materiality.

6.  The order should explain that disclosure of benefits, promises, or inducements to a witness <u>in connection with</u> the witness's testimony or other cooperation in the case could be required.

7.  The order should include specific references to certain types of materials or information that could be required to be disclosed, including:

    a.  that relevant benefits, promises, or inducements may come from law enforcement officials, law enforcement victims services agencies, or the prosecutor;

    b.  prior inconsistent statements and uncharged criminal conduct and convictions; and

    c.  a witness's mental or physical illness or substance abuse.

8.  The order should include that the prosecutor's duty to disclose information that is favorable solely because it tends to impeach a witness's credibility applies only with respect to a testifying witness.

9.  The order should provide that the prosecutor is obligated to <u>timely disclose</u> information in accordance with the United States and New York State constitutional standards, as well as CPL article 240, and the order should provide that disclosure is presumptively timely if the prosecutor shall have completed it no later than 30 days before commencement of a trial in a felony case and 15 days before commencement of a trial in a misdemeanor case.

10. The order should provide that only <u>willful and deliberate</u> conduct will constitute a violation of the order or be eligible for personal sanctions against a prosecutor.

## VIII.  Order Regarding Obligations for Defense Attorneys

1.  Courts should adopt a form document, issued by trial courts in criminal cases, regarding the defense counsel's obligation to comply with defendant's statutory notice obligations and to help ensure constitutionally effective representation and to provide language for such a document.

2.  The document should be phrased as an order, which should <u>direct</u> the defense counsel to comply with defendant's statutory notice obligations and to help ensure constitutionally effective representation.

13

3.  The order should be directed to the firm or institutional defender and the individual defense counsel, as well as the individual attorney responsible for the case at a firm or institutional defender.

4.  The defendant should be provided with a copy of such order.

**Appendix B**

*Model Order Directed to the Prosecution*

At arraignment on an indictment, prosecutor's information, information, or simplified information, the court shall issue a written order as described below. Where either the People or counsel for the defendant is not present at the arraignment, the court shall issue the order at the next scheduled court date with counsel present. As a condition for issuance of the order, counsel for the defendant shall provide the prosecutor with a written demand as specified under CPL 240.10(1) and 240.20, unless the prosecution waives the need for a demand.

The order shall include the following information:

The court hereby orders the District Attorney and the Assistant responsible for the case, or, if the matter is not being prosecuted by the District Attorney, the prosecuting agency and its assigned representative, to make timely disclosures of information favorable to the defense as required by *Brady v Maryland*, 373 US 83 (1963), *Giglio v United States*, 405 US 150 (1972), *People v Geaslen*, 54 NY2d 510 (1981), and their progeny under the United States and New York State constitutions, and by Rule 3.8(b) of the New York State Rules of Professional Conduct, as described hereafter.

- The District Attorney and the Assistant responsible for the case have a duty to learn of such favorable information that is known to others acting on the government's behalf in the case, including the police, and should therefore confer with investigative and prosecutorial personnel who acted in this case and review their and their agencies' files directly related to the prosecution or investigation of this case.

- Favorable information could include, but is not limited to:

  a) Information that impeaches the credibility of a testifying prosecution witness, including (i) benefits, promises, or inducements, express or tacit, made to a witness by a law enforcement official or law enforcement victim services agency in connection with giving testimony or cooperating in the case; (ii) a witness's prior inconsistent statements, written or oral; (iii) a witness's prior convictions and uncharged criminal conduct; (iv) information that tends to show that a witness has a motive to lie to inculpate the defendant, or a bias against the defendant or in favor of the complainant or the prosecution; and (v) information that tends to show impairment of a witness's ability to perceive, recall, or recount relevant events, including impairment resulting from mental or physical illness or substance abuse.

  b) Information that tends to exculpate, reduce the degree of an offense, or support a potential defense to a charged offense.

  c) Information that tends to mitigate the degree of the defendant's culpability as to a charged offense, or to mitigate punishment.

15

    d) Information that tends to undermine evidence of the defendant's identity as a perpetrator of a charged crime, such as a non-identification of the defendant by a witness to a charged crime or an identification or other evidence implicating another person in a manner that tends to cast doubt on the defendant's guilt.

    e) Information that could affect in the defendant's favor the ultimate decision on a suppression motion.

- Favorable information shall be disclosed whether or not it is recorded in tangible form, and irrespective of whether the prosecutor credits the information.

- Favorable information must be timely disclosed in accordance with the United States and New York State constitutional standards, as well as CPL article 240. Disclosures are presumptively "timely" if they are completed no later than 30 days before commencement of trial in a felony case and 15 days before commencement of trial in a misdemeanor case. Records of a judgment of conviction or a pending criminal action ordinarily are discoverable within the time frame provided in CPL 240.44 or 240.45(1). Disclosures that pertain to a suppression hearing are presumptively "timely" if they are made no later than 15 days before the scheduled hearing date. The prosecutor is reminded that the obligation to disclose is a continuing one.

- A protective order may be issued for good cause, and CPL 240.50 shall be deemed to apply, with respect to disclosures required under this order. The prosecutor may request a ruling from the court on the need for disclosure.

- Only willful and deliberate conduct will constitute a violation of this order or be eligible to result in personal sanctions against a prosecutor.

**Appendix C**

*Model Order Directed to Defense Counsel* (with a copy to criminal defendants)

At arraignment on an indictment, prosecutor's information, information, or simplified information, the court shall issue a written order calling attention to certain professional obligations of counsel for the defendant during the representation. Where the People or counsel for the defendant is not present at the arraignment, the court shall issue the order at the next scheduled court date with counsel present. The order should include the following information:

- Defense counsel has the obligation to:

    a) Confer with the client about the case and keep the client informed about all significant developments in the case;

    b) Timely communicate to the client any and all guilty plea offers, and provide reasonable advice about the advantages and disadvantages of such guilty plea offers and about the potential sentencing ranges that would apply in the case;

    c) When applicable based upon the client's immigration status, ensure that the client receives competent advice regarding the immigration consequences in the case as required under *Padilla v Kentucky*, 559 US 356 (2010);

    d) Perform a reasonable investigation of both the facts and the law pertinent to the case (including as applicable, e.g., visiting the scene, interviewing witnesses, subpoenaing pertinent materials, consulting experts, inspecting exhibits, reviewing all discovery materials obtained from the prosecution, researching legal issues, etc.), or, if appropriate, make a reasonable professional judgment not to investigate a particular matter;

    e) Comply with the requirements of the New York State Rules of Professional Conduct regarding conflicts of interest, and when appropriate, timely notify the court of a possible conflict so that an inquiry may be undertaken or a ruling made;

    f) Possess or acquire a reasonable knowledge and familiarity with criminal procedural and evidentiary law to ensure constitutionally effective representation in the case; and

    g) When the statutory requirements necessary to trigger notice from the defense are met (e.g., a demand, intent to introduce the evidence, etc.), comply with the statutory notice obligations for the defense as specified in CPL 250.10, 250.20, and 250.30.

## ADMINISTRATIVE ORDER OF THE
## CHIEF ADMINISTRATIVE JUDGE OF THE COURTS

Pursuant to the authority vested in me, and upon consultation with and agreement of the Administrative Board of the Courts, I hereby amend the uniform rules for courts exercising criminal jurisdiction (22 NYCRR Part 200) by adding sections 200.16 and 200.27 as follows, effective January 1, 2018:

* * *

200.16/200.27: Issuance of Order Confirming Disclosure and Notice Obligations

In all criminal actions on an indictment, prosecutor's information, information, or simplified information, where counsel for the defendant has provided the prosecutor with a written demand as specified under CPL 240.10(1) and 240.20, or where the prosecution has waived such demand, the court shall issue an order to prosecution and defense counsel that, inter alia, (1) confirms the prosecutor's disclosure obligations pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *People v Geaslen*, 54 N.Y.2d 510 (1981), and their progeny; and (2) confirms defense counsel's professional obligation to provide effective assistance of counsel and meet defendant's statutory notice obligations. The order shall be issued on the first scheduled court date, following demand, where both the prosecutor and defense counsel are present. The Chief Administrator of the Courts shall promulgate a model order for this purpose that the court may use as it deems appropriate.

Chief Administrative Judge of the Courts

Dated: November 6, 2017

AO 291/17

STATE OF NEW YORK, _____ COURT
COUNTY OF _____ : CRIMINAL TERM, PART __
-------------------------------------------------------------------------x
PEOPLE OF THE STATE OF NEW YORK,

                                                      Case No. _____

        -against-

_____, Defendant.     Order to Counsel in
                                                   Criminal Cases

-------------------------------------------------------------------------x
_____, J.

The court, pursuant to an Administrative Order of the Chief Administrative Judge and at the recommendation of the New York State Justice Task Force and in furtherance of the fair administration of justice, issues this order as both a reminder and a directive that counsel uphold their constitutional, statutory and ethical responsibilities in the above-captioned proceedings.

**To the Prosecutor:**

The District Attorney and the Assistant responsible for the case, or, if the matter is not being prosecuted by the District Attorney, the prosecuting agency and its assigned representative, is directed to make timely disclosures of information favorable to the defense as required by *Brady v Maryland*, 373 US 83 (1963), *Giglio v United States*, 405 US 150 (1972), *People v Geaslen*, 54 NY2d 510 (1981), and their progeny under the United States and New York State constitutions, and by Rule 3.8(b) of the New York State Rules of Professional Conduct, as described hereafter.

• The District Attorney and the Assistant responsible for the case have a duty to learn of such favorable information that is known to others acting on the government's behalf in the case, including the police, and should therefore confer with investigative and prosecutorial personnel who acted in this case and review their and their agencies' files directly related to the prosecution or investigation of this case.

• Favorable information could include, but is not limited to:

a) Information that impeaches the credibility of a testifying prosecution witness, including (i) benefits, promises, or inducements, express or tacit, made to a witness by a law enforcement official or law enforcement victim services agency in connection with giving testimony or cooperating in the case; (ii) a witness's prior inconsistent statements, written or oral; (iii) a witness's prior convictions and uncharged criminal conduct; (iv) information that tends to show that a witness has a motive to lie to inculpate the defendant, or a bias against the defendant or in favor of the complainant or the prosecution; and (v) information that tends to show impairment of a witness's ability to perceive, recall, or recount relevant events, including impairment resulting from mental or physical illness or substance abuse.

b) Information that tends to exculpate, reduce the degree of an offense, or support a potential defense to a charged offense.

c) Information that tends to mitigate the degree of the defendant's culpability as to a charged offense, or to mitigate punishment.

d) Information that tends to undermine evidence of the defendant's identity as a perpetrator of a charged crime, such as a non-identification of the defendant by a witness to a charged crime or an identification or other evidence implicating another person in a manner that tends to cast doubt on the defendant's guilt.

e) Information that could affect in the defendant's favor the ultimate decision on a suppression motion.

• Favorable information shall be disclosed whether or not it is recorded in tangible form, and irrespective of whether the prosecutor credits the information.

• Favorable information must be timely disclosed in accordance with the United States and New York State constitutional standards, as well as CPL article 240. Disclosures are presumptively "timely" if they are completed no later than 30 days before commencement of trial in a felony case and 15 days before commencement of trial in a misdemeanor case. Records of a judgment of conviction or a pending criminal action ordinarily are discoverable within the time frame provided in CPL 240.44 or 240.45(1). Disclosures that pertain to a suppression hearing are presumptively "timely" if they are made no later than 15 days before the scheduled hearing date. The prosecutor is reminded that the obligation to disclose is a continuing one. Prosecutors should strive to determine if favorable information exists. Nothing herein shall be understood to diminish a prosecutor's obligation to disclose exculpatory information as soon as reasonably possible.

• A protective order may be issued for good cause, and CPL 240.50 shall be deemed to apply, with respect to disclosures required under this order. The prosecutor may request a ruling from the court on the need for disclosure.

• Only willful and deliberate conduct will constitute a violation of this order or be eligible to result in personal sanctions against a prosecutor.

**To Defense Counsel:**

Defense counsel, having filed a notice of appearance in the above captioned case, is obligated under both the New York State and the United States Constitution to provide effective representation of defendant. Although the following list is not meant to be exhaustive, counsel shall remain cognizant of the obligation to:

a) Confer with the client about the case and keep the client informed about all significant developments in the case;

b) Timely communicate to the client any and all guilty plea offers, and provide reasonable advice about the advantages and disadvantages of such guilty plea offers and about the potential sentencing ranges that would apply in the case;

c) When applicable based upon the client's immigration status, ensure that the client receives competent advice regarding the immigration consequences in the case as required under *Padilla v Kentucky*, 559 US 356 (2010);

d) Perform a reasonable investigation of both the facts and the law pertinent to the case (including as applicable, e.g., visiting the scene, interviewing witnesses, subpoenaing pertinent materials, consulting experts, inspecting exhibits, reviewing all discovery materials obtained from the prosecution, researching legal issues, etc.), or, if appropriate, make a reasonable professional judgment not to investigate a particular matter;

e) Comply with the requirements of the New York State Rules of Professional Conduct regarding conflicts of interest, and when appropriate, timely notify the court of a possible conflict so that an inquiry may be undertaken or a ruling made;

f) Possess or acquire a reasonable knowledge and familiarity with criminal procedural and evidentiary law to ensure constitutionally effective representation in the case; and

g) When the statutory requirements necessary to trigger notice from the defense are met (e.g., a demand, intent to introduce the evidence, etc.), comply with the statutory notice obligations for the defense as specified in CPL 250.10, 250.20, and 250.30.

So ordered.

_____
Judge or Justice

Dated: