## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | | N/A |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| N/A | | N/A |

**Proceedings:**  ORDER GRANTING DEFENDANT'S ANTI-SLAPP MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT [97]

Before the Court is a special motion to strike Plaintiff Tensor Law, P.C.'s Second Amended Complaint, Dkt. 82 (the "SAC") pursuant to California's law barring strategic lawsuits against public participation ("anti-SLAPP"), filed by Defendant Michael Rubin ("Rubin" or "Defendant"). *See* Dkt. 97. For the reasons set forth below, the Court GRANTS Defendant's anti-SLAPP motion.

### I.    Factual Background

Plaintiff, a law firm, maintained a contractual attorney-client relationship with Paz De La Huerta regarding unrelated, still-pending litigation. SAC ¶ 25; Dkt. 83-3 (written contract between Plaintiff and De La Huerta). The written contract provided a mechanism for Plaintiff to represent De La Huerta on any new matters that might arise. SAC ¶ 25. Per the contract, Plaintiff then began to represent De La Huerta on a variety of other matters, many of which remain ongoing. *Id.* ¶ 26.

At issue in this case, on October 14, 2017, De La Huerta allegedly contracted Plaintiff to request that Plaintiff represent De La Huerta in pursuit of claims against Defendant Harvey Weinstein for allegedly raping De La Huerta on two separate occasions. *Id.* ¶ 27. Plaintiff proceeded to spend time and resources in representing De La Huerta, including by conducting a forensic investigation for corroborating evidence, representing De La Huerta in media interviews, drafting civil complaints against Weinstein to be filed in California and New York, and filing a criminal complaint against Weinstein in New York and coordinating with law enforcement. *Id.* ¶ 28.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

### A.    Rubin's Alleged Interference

Plaintiff alleges that, on November 7, 2017, Aaron Filler, founder of Plaintiff law firm, received a call from Defendant. *Id.* ¶ 34. Plaintiff alleges that Defendant informed Plaintiff that De La Huerta terminated Plaintiff as counsel for the Weinstein criminal prosecution matter proceeding in New York. *Id.*; *see* Dkt. 83-2 (Filler's declaration as to the contents of the phone call). On this call, Defendant allegedly ordered Plaintiff to cancel or withdraw the emergency motion to quash a grand jury subpoena issued to De La Huerta for De La Huerta's psychotherapy records, which Plaintiff was in the process of finalizing for filing the following day. SAC ¶ 35; Dkt. 83-12 (grand jury subpoena). Plaintiff alleges that Defendant had no basis to believe that the contract between Plaintiff and De La Huerta had been terminated prior to calling Plaintiff on November 7. SAC ¶¶ 37, 40. Despite this phone call, Plaintiff ultimately ended up filing a motion to quash the grand jury subpoena the following day. *See* Dkt. 83-13.

Plaintiff alleges that Defendant took other actions beyond the phone call to interfere with Plaintiff's representation of De La Huerta against Weinstein. Plaintiff provides an exhibit of emails between Defendant and De La Huerta on November 6, 2017, in which De La Huerta requested that Defendant review De La Huerta's psychotherapy records. Dkt. 83-8. In that email, De La Huerta explicitly told Defendant "I haven't told filler that I'm not working with him anymore yet." *Id.*; *see also* Dkt. 83-14 (email from De La Huerta to Defendant later the same day stating "I haven't told Filler about you yet . . . I need all the help I can get . So yes you'll have the records toMorrow [sic]"). Downplaying that line, Plaintiff points to Defendant's follow-up email, in which Defendant stated to De La Huerta that "I don't think [Filler] is admitted to practice law in NY." Dkt. 83-8. Plaintiff alleges that this statement, even if true, ignores the fact that Alex Straus, a partner with Plaintiff law firm, was licensed to practice law in New York. SAC ¶ 46.

Plaintiff alleges that, on November 7, Defendant attempted to obtain De La Huerta's psychotherapy records from Bruce Hillowe, the attorney for De La Huerta's psychotherapist. *Id.* ¶ 51; *see* Dkt. 83-10 (email from Defendant to Hillowe requesting De La Huerta's records). Plaintiff alleges that Plaintiff received a signed authorization from De La Huerta to allow Plaintiff to receive De La Huerta's psychotherapy records, and Plaintiff had already coordinated with Hillowe to receive De La Huerta's records prior to Defendant's involvement. SAC ¶¶ 29, 37, 39; Dkts. 83-5, 83-9. Plaintiff alleges that the purpose of Defendant's attempt to receive De La Huerta's psychotherapy records was to cause an irreversible waiver of De La Huerta's patient-doctor privilege regarding the records so that Defendant could distribute those records publicly in an attempt to discredit De La Huerta's allegations against

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

Weinstein. SAC ¶¶ 53-55. Plaintiff alleges that Defendant gave De La Huerta other erroneous or bad legal advice regarding the grand jury subpoena, which made it less likely that the grand jury would indict Weinstein. *Id.* ¶¶ 49-50, 58-62.

Plaintiff further alleges that Defendant convinced De La Huerta to meet with Defendant in Spain, where De La Huerta resides, on November 12, 2017. *Id.* ¶¶ 55, 57. Plaintiff alleges that Defendant convinced De La Huerta to allow Hillowe to provide Defendant with a paper copy of De La Huerta's psychotherapy records, so that Defendant could bring those records to Spain for the November 12 meeting. *Id.* ¶ 51. At the November 12 meeting, Plaintiff alleges that Defendant allowed for Cristina de Heeren Noble, a friend of De La Huerta, to be present during the meeting in order to break the attorney-client privilege that would otherwise apply to the conversation between Defendant and De La Huerta. *Id.* ¶¶ 57-58; *see also* Dkt. 83-15 (declaration from Noble regarding the November 12 meeting). During the meeting, Defendant allegedly told De La Huerta that he did not think she had a case against Weinstein. Dkt. 83-15 at 2.

Plaintiff's ultimate position is that, Defendant took the above actions and other with the sole intent to disrupt Plaintiff's contract with De La Huerta for reasons other than competition between attorneys over a prospective client. SAC ¶¶ 66-73. Plaintiff alleges that Defendant acted as an agent on behalf of undisclosed principals, including Defendants Harvey Weinstein and The Weinstein Company, LLC. *See id.* ¶¶ 4-6, 74-76.

**B.    Procedural History**

On September 17, 2018, the Court struck Plaintiff's First Amended Complaint for failing to comply with Rule 8 of the Federal Rules of Civil Procedure. *See* Dkt. 80. In striking the First Amended Complaint, the Court ruled that Defendant's anti-SLAPP motion to strike the First Amended Complaint, Dkt. 45, was moot. *See* Dkt. 80 at 2.[1]

---

[1]    Plaintiff argues that Defendant is barred from bringing a second anti-SLAPP motion because the Court dismissed Defendant's first motion as moot, rather than "elect[ing] not to rule on the motion." Dkt. 103 at 16. This argument is obviously incorrect and approaches frivolity. A denial of a motion on mootness grounds necessarily means that the Court did not have the occasion to reach the merits of Defendant's motion, so there have been no prior determinations regarding the merits of Defendant's anti-SLAPP arguments. Moreover, as the Ninth Circuit held in *Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081 (9th Cir. 2004), a federal court cannot grant a defendant's anti-SLAPP motion without leave to amend to the extent that dismissal with prejudice "would directly collide with" the liberal policy in favor of amendments under Rule 15(a) of the Federal Rules of Civil Procedure. *Id.* at 1091. Therefore, to the extent that "the

|  | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

Plaintiff filed the SAC on October 1, 2018. *See* Dkt. 82. The Court subsequently granted motions to dismiss filed by Defendant Linda Fairstein, K2 Intelligence LLC, and BC Strategy UK LTD and dismissed those defendants with prejudice. *See* Dkt. 102.

In the SAC, Plaintiff brings claims against Defendant for (1) tortious interference with a contractual relationship, (2) tortious interference with a prospective economic advantage, and (3) practicing law in California without a license in violation of Cal. Bus. & Prof. Code § 6126. *See* SAC ¶¶ 24-109.

## II.    Standard of Review

### A.    The Anti-SLAPP Law

California Code of Civil Procedure 425.16 provides a mechanism for a defendant to file a motion to strike a cause of action against him or her on the ground that the cause of action arises "from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b). In enacting the anti-SLAPP law, the California legislature was concerned with the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *Id.* § 425.16(a). Accordingly, the legislature intended to construe Section 425.16 "broadly." *Id.*

Pursuant to the anti-SLAPP law, claims arising out of a defendant's exercise of the constitutional right petition or free speech should be stricken "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." *Id.* § 425.16(b). The statute defines the acts subject to an anti-SLAPP motion to include

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in

---

offending claims remain in" the plaintiff's amended complaint after an anti-SLAPP motion, "the anti-SLAPP remedies remain available to defendants." *Id.* Because the Court never ruled on the merits of Defendant's anti-SLAPP motion, it is entirely appropriate for Defendant to bring a renewed motion following the filing of the SAC.

| | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

*Id.* § 425.16(e). In deciding an anti-SLAPP motion, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Id.* § 425.16(b)(2).

A defendant that prevails on an anti-SLAPP motion "shall be entitled to recover his or her attorney's fees and costs," with limited exceptions. *Id.* § 425.16(c)(1). However, if the court finds that the anti-SLAPP motion itself was frivolous or filed solely with the intention to cause "unnecessary delay," the plaintiff successfully defeating the anti-SLAPP motion shall be entitled to costs and reasonable attorney's fees. *Id.*

The Ninth Circuit has held that the protections of subsections (b) and (c) of Section 425.16 apply equally to federal cases premised upon diversity jurisdiction. *See United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845-46 (9th Cir. 2001) (citing *Newsham* for the proposition that subsections (b) and (c) do not conflict with the Federal Rules of Civil Procedure but citing favorably to a district court case holding that subsections (f) and (g), pertaining to filing deadlines and discovery limitations, do directly collide with the Federal Rules).

### B.    Anti-SLAPP Analytical Framework and Evidentiary Standards

Based on the above statutory directives, the California Supreme Court has summarized a court's analysis of an anti-SLAPP motion as a "two-step process." *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). In the first step, "the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id.* The burden is on the moving defendant to demonstrate that the actions at issue fall within the definition of furthering the defendant's right of petition or free speech regarding a public issue. *Id.* The defendant's burden in this regard is only to make a prima facie showing of protected activity, which is "not an onerous one."

|  | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|----------|----------------------|------|----------------|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

*Okorie v. L.A. Unified Sch. Dist.*, 14 Cal. App. 5th 574, 590 (2017) (citations omitted). Once the defendant satisfies his or her initial burden, the defendant "faces no additional requirement of proving the plaintiff's subjective intent" and does not need to demonstrate that the plaintiff's lawsuit "actually has had a chilling effect on the exercise of such rights." *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002) (citations omitted).

      If the court finds that the defendant has met its burden to show the acts at issue constitute protected activity, then under the second step, the court must determine "whether the plaintiff has demonstrated a probability of prevailing on the claim." *Equilon Enters.*, 29 Cal. 4th at 67. As noted above, Section 425.16(b)(2) requires a court to consider not only the pleadings but also any affidavits filed by the parties in support of or opposition to the anti-SLAPP motion. Consistent with this requirement, California courts have held that "a plaintiff opposing an anti-SLAPP motion cannot rely on allegations in the complaint, but must set forth evidence that would be admissible at trial." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 699 (2007) (citation omitted). The plaintiff's burden to establish the probability of prevailing on the merits "is not high" at the anti-SLAPP stage; courts "do not weigh credibility, nor do [courts] evaluate the weight of the evidence." *Id.* Instead, a court must "accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." *Id.* at 699-700. Therefore, "[o]nly a cause of action that lacks even minimal merit constitutes a SLAPP." *Id.* at 700 (internal quotation marks and citations omitted).

      The Ninth Circuit recently revisited the evidentiary significance of a defendant's filing of an anti-SLAPP motion in federal court. *See Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834-35 (9th Cir. 2018). The court rejected the argument that a plaintiff must submit admissible evidence supporting the merits of its claims to withstand an anti-SLAPP motion that challenges only "the sufficiency of the pleadings." *Id.* at 834. The court held that "if the defendants [in an anti-SLAPP motion] have urged only insufficiency of pleadings, then the plaintiff can properly respond merely by showing sufficiency of pleadings, and there's no requirement for a plaintiff to submit evidence to oppose contrary evidence that was never presented by defendants." *Id.* Therefore, "when an anti-SLAPP motion to strike challenges only the *legal* sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Id.* (emphasis added). Conversely, "when an anti-SLAPP motion to strike challenges the *factual* sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard [for summary judgment] will apply." *Id.* (emphasis added). "[I]n such a case, discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made by the court." *Id.*

| | : |
|--|--|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

Neither party addresses the analytical framework set forth in *Planned Parenthood*. From Defendant's anti-SLAPP motion, it is unclear whether Defendant asserts a challenge to the legal sufficiency of Plaintiff's FAC or a challenge to the factual sufficiency of Plaintiff's substantive claims. On the one hand, Defendant submitted supporting declarations and attached exhibits in conjunction with the filing of the anti-SLAPP motion, suggesting that Defendant intends to extend the Court's analysis beyond the pleadings. On the other hand, however, Defendant's primary substantive arguments for why Plaintiff's claims are meritless pertain solely to Plaintiff's legal theories—*e.g.*, whether De La Huerta was contractually bound to Plaintiff given that the contract at issue was one between attorney and client, whether Plaintiff has set forth sufficient allegations that Defendant engaged in wrongful conduct that could support a claim for tortious interference with a prospective economic advantage, and whether Defendant can be found civilly liable for a violation of Cal. Bus. & Prof. Code § 6126. *See* Dkt. 97-1 at 12-20. Although the Court provided an overview of Defendant's account of the facts in this Order, the Court need not refer to any of the evidence submitted by Defendant in deciding whether Plaintiff has set forth a legally sufficient claim against Defendant.[2] The same is true for the additional documentary evidence Plaintiff attached in opposition to Defendant's anti-SLAPP motion, most of which is a repeat of the exhibits incorporated by reference into the SAC. Therefore, the Court construes Defendant's anti-SLAPP motion as challenging the legal sufficiency of Plaintiff's claims and will analyze Defendant's motion under the standards set forth in Rule 12(b)(6).

**C.     Rule 12(b)(6) Standards**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

---

[2]     For this reason, the Court need not address Plaintiff's challenges to the authenticity of the emails Defendant attached by declaration based upon conflicting timestamps in the email chains. Even so, Plaintiff's arguments on this point were unpersuasive.

|  |  | : |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Because Plaintiff has referred to exhibits into the SAC, the Court may fairly consider those exhibits as part of this anti-SLAPP motion pursuant to Rule 12(b)(6) under the doctrine of incorporation by reference, without converting the motion into one for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159-60 (9th Cir. 2012). And, to the extent that a document incorporated by reference in a complaint contradicts the plaintiff's conclusory allegations in the complaint, the court need not accept as true the plaintiff's contradictory allegations. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009) (citation omitted), *cert. denied*, 558 U.S. 1111 (2010).

## III.    Analysis

### A.    Protected Activity

To determine whether the defendant's actions at issue in the plaintiff's causes of action arises from the categories of protected activity enumerated in Section 425.16(e), the court "examine[s] the principal thrust or gravamen of a plaintiff's cause of action." *Okorie*, 14 Cal. App. 5th at 586-87 (internal quotation marks and citation omitted). "In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002) (emphasis in original) (citations omitted). Accordingly, "[a] cause of action does not arise from protected activity for purposes of the anti-SLAPP statute if the protected activity is merely incidental to the cause of action." *Digerati Holdings, LLC v. Young Money Entm't, LLC*, 194 Cal. App. 4th 873, 884 (2011) (citation omitted).

To repeat, and relevant for this action, protected activity is defined in the anti-SLAPP law to include written or oral statements made before a "legislative, executive, or judicial proceeding, or any other official proceeding by law," or made "in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Cal.

| | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|

| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* |
|---|---|

Civ. Proc. Code § 425.16(e). Per these definitions, "[n]umerous cases have held that the SLAPP statute protects lawyers sued for litigation-related speech and activity." *Thayer v. Kabateck Brown Kellner LLP*, 207 Cal. App. 4th 141, 154 (2012) (collecting cases). Litigation-related activity includes "legal advice and settlement made in connection with litigation," *id.* (citations omitted), as well as "communicative conduct such as the filing, funding, and prosecution of a civil action," *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006) (citation omitted). Thus, "if the plaintiff is a nonclient who alleges causes of action against someone else's lawyer based on that lawyer's representation of other parties, the anti-SLAPP statute is applicable to bar such nonmeritorious claims." *Thayer*, 207 Cal. App. 4th at 158.

Furthermore, the protections for litigation activity extend to pre-litigation conduct, including authorized official criminal or public agency proceedings or investigations. *See Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1048-49 (1997) (holding that an investigative audit performed by the state auditor "is an authorized official proceeding" and that therefore a newspaper article about the audit constituted protected activity for purposes of an anti-SLAPP motion even though the audit itself was confidential). Activity which is not itself an exercise of the right of petition falls within the "breathing space" of that constitutional right if the conduct is "(1) incidental or reasonably related to an actual petition or actual litigation or to a claim that could ripen into a petition or litigation and (2) the petition, litigation, or claim is not a sham." *Tichinin v. City of Morgan Hill*, 177 Cal. App. 4th 1049, 1068 (2009).[3]

Most importantly, statements before or in connection with an official proceeding "are not limited to statements made after the commencement of such a proceeding." *Digerati Holdings*, 194 Cal. App. 4th at 886-87. Thus, "statements made in anticipation of a court action or other official proceeding may be entitled to protection under the anti-SLAPP statute," provided that the statement "concerns the subject of the dispute and is made in anticipation of litigation contemplated in good faith and under serious consideration." *Id.* at 887 (internal quotation marks and alterations omitted) (citations omitted).

Here, the entirety of Plaintiff's allegations against Defendant pertain to Defendant's conduct in his prospective representation of De La Huerta against Weinstein in both civil and criminal proceedings. De La Huerta's civil proceedings against Weinstein had not yet been initiated, but Defendant's

---

[3]     Although *Tichinin*'s analysis fell under the second step of the anti-SLAPP analysis to determine whether the plaintiff established a probability of success on his claims of retaliation in exercise of his constitutional right to petition, the Court finds the same analysis applicable under the first prong, which similarly asks whether the defendant's alleged activity constituted an exercise of the right to petition.

Initials of Preparer                     :                PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|----------|----------------------|------|----------------|

| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* |
|-------|----------------------------------------------|

interactions with De La Huerta concerned the subject matter of De La Huerta's prospective civil claims against Weinstein, which De La Huerta seriously considered bringing at the time. De La Huerta did eventually file a civil case against Weinstein in California state court, and is represented by Plaintiff in that action, showing that the civil litigation discussed between Defendant and De La Huerta was contemplated in good faith. *See Paz De La Huerta v. Harvey Weinstein et al.*, No. 2:19-cv-02183-ODW-JC (C.D. Cal.) (De La Huerta's civil case against Weinstein, which was removed from state court on March 22, 2019).

As to the criminal proceedings against Weinstein in New York, Plaintiff's own documentary evidence incorporated into the SAC shows that De La Huerta sought Defendant's assistance with the grand jury subpoena for psychotherapy records. For instance, Plaintiff provided emails between De La Huerta and Defendant on November 6, 2017, in which De La Huerta told Defendant "I want us to go through the records together . I haven't told filler that I'm not working with him anymore yet so I don't know what to do." Dkt. 83-8. In another email chain between De La Huerta and Defendant later that same day, De La Huerta repeated that "I haven't told Filler about you yet . It's all fine . I need all the help I can get." Dkt. 83-14. On November 7, De La Huerta then provided her consent to Hillowe to have Defendant receive De La Huerta's psychotherapy records. *See* Dkt. 83-10. These emails alone confirm that Defendant's actions regarding the subpoena of De La Huerta's psychotherapy records were taken with De La Huerta's knowledge and consent in furtherance of De La Huerta's involvement in the criminal proceedings against Weinstein in New York.

During Defendant's meeting with De La Huerta in Spain, the parties discussed De La Huerta's psychotherapy records in relation to De La Huerta's prospective civil claims against Weinstein, for which Defendant provided legal advice to De La Huerta. Plaintiff's attached declaration from Noble, incorporated by reference into the SAC, confirms that the subject matter of these discussions fell within the bounds of protected activity articulated in Section 425.16(e). *See* Dkt. 83-15. Therefore, Defendant's actions in advising De La Huerta about matters pertaining to Weinstein constituted protected activity in connection with official proceedings for purposes of the anti-SLAPP statute.

The facts of this case are analogous to those in *Taheri Law Group v. Evans*, 160 Cal. App. 4th 482 (2008). There, the plaintiff, a law firm, sued an attorney for intentional interference with prospective economic advantage for soliciting the plaintiff's client. *Id.* at 485-86. In response to the defendant's anti-SLAPP motion, the plaintiff argued that its lawsuit against the defendant did not arise out of protected activity because the plaintiff's claims did not pertain to anything the defendant did once the defendant became the plaintiff's attorney. *Id.* at 489. The court rejected this argument, reasoning that the plaintiff's

|  | : |
|--|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

complaint "plainly shows it arose from [the defendant's] communications with [the client] about pending litigation." *Id.* The court elaborated that it is irrelevant under the first prong of the anti-SLAPP analysis whether some of the communications between the defendant and the client occurred when the plaintiff had represented the client, because the focus is on whether the defendant's conduct was "'made in connection with an issue under consideration or review by a . . . judicial body.'" *Id.* (quoting Cal. Civ. Proc. Code § 425.16(e)). Thus, because the plaintiff's causes of action "arise directly from communications between [the client] and [the defendant] about the pending lawsuits against [the client]," the defendant's alleged conduct constituted protected activity under the anti-SLAPP statute. *Id.* The court further noted that the litigation privilege, which applies to prelitigation communications such as those alleged by the plaintiff, "clearly 'informs interpretation of the "arising from" prong of the anti-SLAPP statute.'" *Id.* (quoting *Navellier*, 106 Cal. App. 4th at 770); *see also* Cal. Civ. Code § 47 (providing for privilege protections for statements made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law . . . ."); *Rubin v. Green*, 4 Cal. 4th 1187, 1194-95 (1993) (citing cases applying the litigation privilege of Section 47 broadly to include "communications with 'some relation' to an *anticipated* lawsuit") (emphasis in original).

While the precise nature of the *Taheri* defendant's representation of the contested client is somewhat distinguishable from Defendant's consultations with De La Huerta, the overall disposition of *Taheri* applies equally to Defendant's alleged conduct. Defendant communicated with De La Huerta about ongoing criminal proceedings and anticipated civil claims, and Defendant did not need to engage in an actual representation of De La Huerta to benefit from the litigation privilege—and, by extension, a finding that Defendant's conduct was protected activity under anti-SLAPP. Thus, it is irrelevant that De La Huerta eventually chose not to hire Defendant as a consultant and instead opted to select Goldberg for representation.

If there is any doubt, the principal actions of Defendant that Plaintiff challenges as legally improper amount to Defendant's allegedly erroneous *legal advice* to De La Huerta regarding the release of De La Huerta's psychotherapy records, the response to the grand jury subpoena, and the strength of De La Huerta's potential civil claims against Weinstein. Besides, the only factual allegation relevant to Plaintiff's claims for tortious interference and practicing law without a license is the phone call from Defendant to Plaintiff, during which Defendant conveyed that Plaintiff had been terminated from representing De La Huerta. Even assuming the truth of Plaintiff's allegations in the SAC regarding the factual accuracy of Defendant's statements, Plaintiff's attached exhibits reveal that this phone call was taken in reference to Defendant's prospective representation of De La Huerta. The Court agrees with

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

*Taheri*'s proclamation that "it is difficult to conjure a clearer scenario than the case before us of a lawsuit arising from protected activity." *Taheri*, 160 Cal. App. 4th at 489.

Plaintiff makes a variety of vague, confusing, and irrelevant arguments as to why Defendant's conduct is not protected under anti-SLAPP. The only potentially meritorious argument Plaintiff raises is by citation to *Coretronic Corp. v. Cozen O'Connor*, 192 Cal. App. 4th 1381 (2011). In that case, the plaintiff sued its attorneys for engaging in a simultaneous representation of the plaintiff's adversary in the proceeding for which the defendants represented the plaintiff. *Id.* at 1385-87. The plaintiff claimed that the defendants improperly gained access to the plaintiff's confidential documents, which would benefit the plaintiff's adversary in its lawsuit against the plaintiff. *Id.* at 1387. The court held that the "gravamen of the complaint" was not premised on any actions by the defendants taken in connection with any official proceedings but instead pertained to the defendants' failure to disclose their adverse representation. *Id.* at 1391. The court elaborated, "[t]hat the concealment occurred in the context of litigation does not change this result, as it is clear that any litigation activity is only incidental to plaintiffs' allegations of wrongdoing." *Id.* Put another way, "[a]ny assertedly protected activity [by the defendants] is not the root of the complaint; it is merely the setting in which the claims arose." *Id.*

*Coretronic* is plainly distinguishable from the instant case for a variety of reasons. First, unlike in *Coretronic*, the allegedly wrongful conduct performed by Defendant was to disrupt the attorney-client relationship between Plaintiff and De La Huerta, not anything relating to Defendant's receipt of De La Huerta's psychotherapy records. Any direct claims of "concealment" or other misconduct by Defendant in that regard could not be prosecuted by Plaintiff but would instead need to be pursued by De La Huerta herself. Second, because the conduct relevant to Plaintiff's claims for tortious interference were actions taken in furtherance of Defendant's prospective representation of De La Huerta, the ongoing criminal proceedings and contemplated civil actions against Weinstein did not merely serve as the "context" or "setting" of Plaintiff's claims; Plaintiff's claims arise directly out of Defendant's alleged conduct in furtherance of those proceedings. Lastly, the procedural posture of this case is different than in *Coretronics*, where the plaintiff was the client suing its attorney for improper actions beyond the scope of the attorney-client relationship.[4] But here, Plaintiff's lawsuit against a competing attorney for attempting to solicit Plaintiff's client necessarily centers around Defendant's conduct in attempting to

---

[4]    Other cases have held that actions by a client against an attorney for legal malpractice or other misconduct in representing the client is not protected activity under the anti-SLAPP law. *See Cal. Back Specialists Med. Grp. v. Rand*, 160 Cal. App. 4th 1032, 1037 (2008) (collecting cases).

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

recruit De La Huerta and furnish prospective legal advice to De La Huerta, both of which are undoubtedly protected activity in connection with official proceedings as explained above.

Plaintiff's citation to *California Back Specialists Medical Group v. Rand*, 160 Cal. App. 4th 1032 (2008), fares no better. In that case, the court held that a dispute between the plaintiff and the defendant attorney, regarding whether the defendant improperly disbursed proceeds from a personal injury action to his client instead of satisfying the plaintiff's medical liens, did not pertain to protected activity. *Id.* at 1037. The court construed the parties' dispute as one "between private parties about the validity and satisfaction of the liens," issues which "were never under consideration in any court or official proceedings until [the plaintiff] filed the current action." *Id.* Contrary to *Rand*, Plaintiff's claims in this case are not merely a private dispute between attorneys outside of the litigation context but instead originate out of each party's potential or prospective representation of De La Huerta in official proceedings.

In summary, Defendant has met his burden to make a prima facie showing that Plaintiff's claims for tortious interference and practicing law without a license arise out of protected conduct—specifically, Defendant's exercise of his constitutional right to petition in regard to Defendant's prospective legal representation of De La Huerta for her role in the ongoing criminal proceedings against Weinstein in New York and in connection with the anticipated civil actions De La Huerta could file against Weinstein. Therefore, the first prong of the anti-SLAPP analysis is satisfied, and the Court will proceed to address Plaintiff's probability of success on its claims against Defendant.

**B.      Probability of Success**

To restate from above, under the second prong of the anti-SLAPP test guided by the standards of Rule 12(b)(6), the plaintiff bears the minimal burden of showing that the allegations in the complaint, plus any evidence incorporated by reference into the complaint, are legally sufficient to support a prima facie case for each of its causes of action. *See Digerati Holdings*, 194 Cal. App. 4th at 884 (citation omitted); *Planned Parenthood*, 890 F.3d at 834. The court is not to weigh credibility or evaluate the weight of the evidence or allegations, and the court must accept all of the plaintiff's evidence or allegations as true. *Overstock.com*, 151 Cal. App. 4th at 699-700.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

      1.     *Tortious Interference with Contractual Relationship*

A plaintiff asserting a claim for tortious interference with contractual relations must plead the following elements: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998) (internal quotation marks omitted) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)).

Plaintiff's claim against Defendant for tortious interference with a purported contract between Plaintiff and De La Huerta is insufficient under the Rule 12(b)(6) pleading standards, because Plaintiff cannot show that De La Huerta was contractually bound to retain Plaintiff for representing De La Huerta in any matter, let alone the criminal investigation against Weinstein in New York or De La Huerta's anticipated civil claims against Weinstein. California law is clear that a client has "both the power and the right at any time to discharge his attorney with or without cause." *Fracasse v. Brent*, 6 Cal. 3d 784, 790 (1972). Therefore, if a client discharges her attorney, "[s]uch a discharge does not constitute a breach of contract for the reason that it is a basic term of the contract, implied by law into it by reason of the special relationship between the contracting parties, that the client may terminate the contract at will." *Id.* at 791.

De La Huerta was free to discharge Plaintiff as her attorney at any time she chose, meaning that any allegedly improper efforts on the part of Defendant to encourage De La Huerta to terminate Plaintiff's representation necessarily could not cause a "breach" of a contractual relationship.[5] Moreover, even assuming that an action for tortious interference with a contract could be maintained in reference to a client-attorney relationship, the retainer agreement between Plaintiff and De La Huerta does not establish a contractual obligation between Plaintiff and De La Huerta regarding any Weinstein proceedings. Specifically, the retainer agreement gives De La Huerta "the right to terminate [Plaintiff's] representation at any time." Dkt. 83-3 at 4. For this reason, Plaintiff's claim does not plausibly allege a breach of a contractual relationship between Plaintiff and De La Huerta, nor can Plaintiff show that it

---

[5]      Plaintiff is not alleging that De La Huerta has not paid Plaintiff for past services rendered, which of course could constitute a breach of contract claim Plaintiff could bring against De La Huerta directly. But in this context, where the alleged breach is the termination of an attorney-client relationship depriving the lawyer of representation for future services, there can be no viable claim for breach of contract by a client seeking to retain new representation.

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

was damaged by De La Huerta's termination of Plaintiff's representation, which De La Huerta could have done at any time of her choosing.[6]

Plaintiff cites to authority establishing that the at-will nature of a contractual relationship does not on its own defeat a claim for tortious interference with that contract. While Plaintiff is correct that a claim for tortious interference may be maintained in reference to an at-will employment relationship, "an interference with an at-will contract properly is viewed as an interference with a prospective economic advantage," because such a tort "does not require the existence of a legally binding contract." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1152 (2004). Therefore, Plaintiff would need to plead an independently wrongful act, as addressed below. *Id.* And in reference to the requirement to plead a wrongful act, "certain competitive conduct is nonactionable when it interferes with the at-will contract relations of another." *Id.* at 1149.

As explained above, the conduct about which Plaintiff complains was merely competitive conduct intended to convince De La Huerta to hire Defendant in connection with her claims against Weinstein. Defendant's call to Plaintiff to inform Plaintiff of its termination from representation was made on behalf of De La Huerta as a prospective client, which was entirely appropriate for a consulting attorney to do. Indeed, Plaintiff's own evidence incorporated by reference into the SAC reveals that De La Huerta had the intent to terminate Plaintiff from representation on the Weinstein criminal matter on November 6, 2017, the day before Defendant called Plaintiff to have Plaintiff cease working on the motion to quash the grand jury subpoena for De La Huerta's psychotherapy records. *See* Dkts. 83-8, 83-14. Nothing about Plaintiff's allegations suggest that Defendant took any actions beyond those to effectuate a prospective client's wishes as part of Defendant's competition with Plaintiff over the representation of De La Huerta in connection with the ongoing criminal proceedings against Weinstein in New York. Without more, Plaintiff's allegations are insufficient to show that Defendant intended to induce a breach of contract between Plaintiff and Defendant. As the court in *Taheri* noted, courts should

---

[6]     As an additional note, Plaintiff's convoluted allegations of damages appear to be focused on the repercussions of Defendant's alleged tortious interference on De La Huerta, not on Plaintiff. For instance, Plaintiff states that part of its damages calculation would include those that would likely arise out of De La Huerta's anticipated civil claims against Weinstein for sexual assault and employment disputes, which would include "a contingent portion of recovery of [De La Huerta's] losses when Weinstein caused her to be terminated from at least one season of Boardwalk Empire." SAC ¶ 91. Those damages may be sought in De La Huerta's civil claims against Weinstein, but there is no basis for Plaintiff to attempt to seek damages that De La Huerta may have incurred from Weinstein's alleged sexual assault in this action for tortious interference against Rubin.

| | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|----------|----------------------|------|----------------|

| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* |
|-------|-----------------------------------------------|

be wary of litigants' attempts "to thwart the client's fundamental right of access to the courts, and specifically to the lawyer of his choice." *Taheri*, 160 Cal. App. 4th at 491 (citations omitted).

Lastly, if there is any doubt, Plaintiff's evidence in the SAC reveals that Defendant's purported interference did not cause a breach of contract between Plaintiff and De La Huerta, if such a breach even occurred. California uses the "substantial factor" test for causation in cases of intentional torts, including tortious interference with contractual relations. *See Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 909 (9th Cir. 2008) (citing *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 391 (2004)). In light of De La Huerta's emails to Defendant on November 6 revealing her intent to terminate Plaintiff's representation in connection with the grand jury subpoena in New York, Plaintiff has not and cannot allege that Defendant's consultations with De La Huerta were a substantial factor in causing De La Huerta to terminate Plaintiff's representation.

In summary, Plaintiff's legal theory against Defendant for tortious interference with contractual relations between Plaintiff and De La Huerta fails as a matter of law.

### 2. *Tortious Interference with Prospective Economic Advantage*

Plaintiff's second cause of action against Defendant for tortious interference with a prospective economic advantage is highly similar to Plaintiff's first cause of action. The elements of tortious interference with prospective economic advantage are "(1) a relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) a wrongful act, apart from the interference itself, by the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Salma v. Capon*, 161 Cal. App. 4th 1275, 1290 (2008) (internal quotation marks and citation omitted).

As California case law has repeatedly noted, claims of tortious interference with a prospective economic advantage are subject to further protections than claims of tortious interference with a contract under the "competition privilege." "The chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective." *Pac. Gas & Elec. Co.*, 50 Cal. 3d at 1126 (citations omitted). The competition privilege protects a competitor's right to "divert business to himself as long as he uses fair and reasonable means." *I-CA Enters., Inc. v. Palram Ams., Inc.*, 235 Cal. App. 4th 257, 292-93 (2015) (internal quotation marks and citation

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

omitted). The wide reach of the competition privilege naturally leads to the result that the plaintiff has the burden to prove that the defendant's interference was independently wrongful. *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392-93 (1995); *Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners*, 52 Cal. App. 4th 867, 881 (1997). "Wrongful" conduct, in this context, is not merely acting with an "improper motive." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003). The defendant must have engaged in an act that is "unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1159 (citations omitted).

While Plaintiff's claim for tortious interference with prospective economic advantage does not depend on the existence of a binding contractual arrangement between Plaintiff and De La Huerta, Plaintiff has failed to allege any facts to support a finding that Defendant committed a wrongful act. Repeating from the above analysis, Defendant's alleged conduct was competitive in nature and executed with the intent to protect the interests of De La Huerta, a prospective client. Defendant acted upon De La Huerta's manifested intent not to retain Plaintiff in connection with the grand jury subpoena in New York, an intent which Plaintiff's own evidence reveals. Defendant's conduct was taken to advance De La Huerta's interests in the criminal proceedings against Weinstein in New York, and Defendant's discussions with De La Huerta in Spain resulted in the provision of legal advice and counseling about De La Huerta's prospective civil claims against Weinstein. Any allegations from Plaintiff about Defendant's mal-intent in engaging with De La Huerta are conclusory and are contradicted by the evidence Plaintiff included in the SAC.

Furthermore, in the SAC, Plaintiff has not identified a single statute, law, or legal standard that Defendant violated in his conduct pertaining to De La Huerta; the only independent act Plaintiff argues was wrongful was Defendant's advice to De La Huerta and Hillowe not to respond to the grand jury subpoena by the deadline asserted in the subpoena, which would amount to a "criminal act of contempt." SAC ¶ 102. But erroneous legal advice, if indeed Defendant's advice was even erroneous, does not rise to such a level of wrongfulness. Beyond this unsubstantiated allegation in the SAC, Plaintiff's opposition to Defendant's anti-SLAPP motion does not even advance any arguments as to why Plaintiff has adequately pled a claim for tortious interference with prospective economic advantage.[7] The only

---

[7]     Plaintiff's request for leave to file a sur-reply, Dkt. 107, is GRANTED, although the Court need not consider Plaintiff's arguments therein and, regardless, finds Plaintiff's arguments just as unpersuasive and incorrect as Plaintiff's arguments in its opposition. In reference to the second cause of action, Plaintiff merely argues that this claim was asserted in the alternative in the event that the Court finds there was no binding contract between Plaintiff and De La Huerta to support

|  | : |  |
|---|---|---|
| Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

theory Plaintiff relies upon for any type of "wrongful" act is the purported agency relationship between Rubin and Weinstein, which is pled only in conclusory terms and is insufficient to withstand a 12(b)(6) motion.

As Defendant points out, Rule 2-100(c)(2) of the California Rules of Professional Conduct authorizes lawyers to communicate directly or indirectly with a party known to be represented by another lawyer if the communications are "initiated by [the] party seeking advice or representation from an independent lawyer of the party's choice." While Defendant avers by declaration that he was placed in contact with De La Huerta "through a mutual friend," Dkt. 97-3 ¶ 1, Plaintiff provides no evidence or allegations in the SAC suggesting that Defendant initiated the communications with De La Huerta about the Weinstein matters. It is telling that Plaintiff did not attach any declarations or other evidence from De La Huerta, who remains a client of Plaintiff on numerous matters which includes a civil case against Weinstein, about the initiation of communications between De La Huerta and Defendant. Without any allegations from Plaintiff as to how Defendant and De La Huerta initiated their discussions about prospective representation, there is no basis to conclude that Defendant engaged in any improper conduct in his attempt to solicit De La Huerta's business. And even if Defendant did initiate communications with De La Huerta contrary to Rule 2-100(c)(2), such contacts, without more, would not rise to the level of "wrongfulness" as to support a claim for tortious interference with prospective economic advantage.

Lastly, Plaintiff failed to allege that Defendant's actions caused any termination of a prospective economic advantage for Plaintiff. A plaintiff asserting a claim of tortious interference with prospective economic advantage must establish that "it is reasonably probable that the prospective economic advantage would have been realized but for defendant's interference." *Youst v. Longo*, 43 Cal. App. 3d 64, 71 (1987); *see also Bank of N.Y.*, 523 F.3d at 909 (noting that the "substantial factor" test applies for all claims of intentional torts under California state law). Plaintiff has not alleged sufficient facts demonstrating that Defendant was a substantial factor in De La Huerta's termination of Plaintiff's representation, through any "wrongful" acts or otherwise. Plaintiff's attached exhibits reveal the opposite; De La Huerta independently intended to terminate Plaintiff's representation. De La Huerta was consulting not only with Defendant but also with Goldberg at the time of the incidents in question, and the parties both acknowledge that De La Huerta ended up retaining Goldberg instead of Defendant anyways, independently of Defendant's involvement. Therefore, Plaintiff's claim for tortious

---

Plaintiff's first cause of action. *See* Dkt. 107-1 at 5. But notably, Plaintiff again fails to address the question of whether Defendant committed an independently wrongful act during his interactions with De La Huerta.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

interference with a prospective economic advantage lacks the requisite causal connection between Defendant's alleged conduct and Plaintiff's alleged injury.

Accordingly, Plaintiff has not alleged sufficient facts to support a claim for tortious interference with a prospective economic advantage against Defendant for seeking to represent De La Huerta and taking actions on her behalf at her direction.

3.      *Practicing Law Without a License*

Plaintiff's third cause of action alleges that, by calling into Plaintiff's office in California to give "a series of orders and directions to FILLER affecting both New York and California matters," Defendant engaged in the practice of law in California, for which he is not licensed. SAC ¶ 108.

California Business & Professions Code Section 6126(a) provides that

> [a]ny person advertising or holding himself or herself out as practicing or entitled to practice law or otherwise practicing law who is not an active licensee of the [California] State Bar, or otherwise authorized pursuant to statute or court rule to practice law in this state at the time of doing so, is guilty of a misdemeanor punishable by up to one year in a county jail or by a fine of up to one thousand dollars ($1,000), or by both that fine and imprisonment.

Cal. Bus. & Prof. Code § 6126(a). Plaintiff relies on this provision to assert a civil claim against Defendant for the unauthorized practice of law, but this statute plainly provides for criminal penalties for such conduct. The remedies for a violation of Section 6126 can only be sought in an "enforcement action brought in the name of the people of the State of California by the Attorney General, a district attorney, or a city attorney, acting as a public prosecutor." *Id.* § 6126.5(a). Plaintiff is not the Attorney General, a district attorney, or a city attorney, and Plaintiff is not bringing this action on behalf of the people of the State of California. Only in a proper enforcement action brought by the enumerated state actors can a court award civil monetary relief "for any person who obtained services offered or provided in violation of . . . Section 6126 or who purchased any good, services, or real or personal property in connection with" those services. *Id.* In fact, Section 6126.5(d) explicitly disclaims conferring the ability to bring enforcement actions on any private party: "This section shall not be construed to create, abrogate, or otherwise affect claims, rights, or remedies, if any, that may be held by a person or entity

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

other than those law enforcement agencies described in subdivision (a)." Simply put, nothing in the California Business & Professions Code authorizes a private party to bring a civil suit for a violation of Section 6126, and Plaintiff's third cause of action easily fails as a matter of law.

Plaintiff's argument via sur-reply as to why this Court would have jurisdiction over Plaintiff's claim under Section 6126 is unintelligible. *See* Dkt. 107-1 at 6-8. Plaintiff offers no explanation of how Section 6126 or Section 6126.5 might fairly be read to confer upon Plaintiff the ability to sue Defendant for the unauthorized practice of law. Plaintiff's arguments conflate the issue of jurisdiction with the substantive merit of Plaintiff's argument that Defendant engaged in the unauthorized practice of law through a phone call, which, in any event, is wholly meritless. Plaintiff has not pointed to a single case indicating that a licensed attorney calling an attorney in a different state constitutes practice of law in the latter state, particularly where the call pertains to a dispute over which counsel is representing a contested client.

The Court finds that Plaintiff's third cause of action is frivolous, and so are Plaintiff's arguments in defense of that cause of action. Therefore, the Court believes that sanctions are warranted and appropriate to deter any future frivolous behavior by Plaintiff. Accordingly, Plaintiff is ORDERED TO SHOW CAUSE as to why Plaintiff should not be sanctioned under Federal Rule of Civil Procedure 11 for bringing a frivolous cause of action and for advancing frivolous arguments before this Court.

**IV.    Leave to Amend**

Where a complaint is dismissed, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (holding that the trial court abused its discretion by not applying *Foman* factors). Under Rule 15(a) there is a presumption in favor of granting leave to amend absent prejudice or a strong showing of any *Foman* factors. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-01490-SVW-SK | Date | April 10, 2019 |
|---|---|---|---|
| Title | *Tensor Law P.C. v. Michael F. Rubin et al.* | | |

As noted above in footnote 1, a court should not grant a defendant's anti-SLAPP motion without leave to amend if doing so would offend Rule 15(a)'s liberal attitude toward amendments. *See Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). Given the deficiencies in Plaintiff's legal theories under the first and third causes of action, amendment would be futile under the federal standards, because no additional factual allegations could overcome the conclusion as a matter of law that Defendant could not have tortuously interfered with any contract between Plaintiff and De La Huerta and cannot be found liable in a civil action under Section 6126. Therefore, Plaintiff's first and third causes of action are dismissed with prejudice.

However, Plaintiff's second cause of action is dismissed with leave to amend. The Court will give Plaintiff one final opportunity to plead additional facts that could support a theory that Rubin engaged in "wrongful" conduct sufficient to maintain a claim for tortious interference with a prospective economic relationship, including any facts Plaintiff can allege that would establish an agency relationship between Rubin and Weinstein in a non-conclusory manner. Plaintiff will also need to cure the deficiencies in its allegations that Defendant's alleged wrongful conduct caused Plaintiff injury.

**V.    Conclusion**

For the reasons set forth above, the Court GRANTS Defendant's anti-SLAPP motion to strike the SAC. Plaintiff's first and third causes of action are DISMISSED WITH PREJUDICE. Plaintiff's second cause of action is DISMISSED WITHOUT PREJUDICE.

Plaintiff is ordered to file an amended complaint within 21 days of the date of this Order; the failure to do so will result in dismissal of Plaintiff's case with prejudice. In responding to Plaintiff's amended complaint, consistent with the Federal Rules of Civil Procedure, Defendant may file a subsequent anti-SLAPP motion to strike Plaintiff's renewed claim for tortious interference with a prospective economic advantage. *See Verizon Del.*, 377 F.3d at 1091. Defendant is cautioned, however, to explain under what standards Defendant brings his renewed anti-SLAPP motion pursuant to the Ninth Circuit's holding in *Planned Parenthood*. *See* 890 F.3d at 834.

Furthermore, Plaintiff is ORDERED TO SHOW CAUSE as to why Plaintiff should not be sanctioned for bringing a frivolous cause of action and advancing frivolous arguments pertaining to Cal. Bus. & Prof. Code § 6126. Plaintiff's response shall be due within 7 days of the date of this Order.

IT IS SO ORDERED.

| | : |
|---|---|
| Initials of Preparer | PMC |